25TH JUDICIAL DISTRICT COURT FOR THE PARISH OF PLAQUEMINES

STATE OF LOUISIANA

DOCKET NO. 66435                                      DIVISION " A "

ANA L. ALMEIDA AND DALMO G. ALMEIDA, INDIVIDUALLY AND
ON BEHALF OF TITO LIVIO ALMEIDA, DECEASED, AND
SARAH ALMEIDA RODRIGUEZ, AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF TITO LIVIO ALMEIDA, DECEASED,

FILED

**VERSUS**

NOV 3 0 2020

Deputy Clerk

PANTHER HELICOPTERS, INC., BELL TEXTRON, INC., ARROW AVIATION
COMPANY, LLC, AND ROLLS-ROYCE CORP.

FA V

FILED: _____          _____
                                              **DEPUTY CLERK**

---

**PETITION FOR WRONGFUL DEATH
AND SURVIVAL DAMAGES**
**Pursuant to the Louisiana Products Liability Act, La. R.S. 9:2800.51, and La. Civ. Code
arts. 2315.1 & 2315.2**
**Jury Trial Demanded**

COME NOW Plaintiffs, DALMO GERALDO DE ALMEIDA and ANA LUCIA

ALMEIDA, individually and as beneficiaries of the Estate of Tito Livio Almeida, and SARAH

ALMEIDA RODRIGUEZ, as personal representative of the Estate of Tito Livio Almeida,

deceased, who sue Defendants Panther Helicopters, Inc., Bell Textron, Inc., Arrow Aviation

Company, LLC, and Rolls-Royce Corp., and allege as follows:

1/35

# Exhibit A

**PARTIES**

**1.**

Plaintiffs DALMO GERALDO ALMEIDA and ANA LUCIA ALMEIDA are the parents of decedent Tito Livio Almeida.

**2.**

Plaintiffs DALMO GERALDO ALMEIDA and ANA LUCIA ALMEIDA are residents of Brazil.

**3.**

Plaintiff SARAH ALMEIDA RODRIGUEZ is personal representative of the Estate of Tito Livio Almeida.

**4.**

Plaintiff SARAH ALMEIDA RODRIGUEZ is a resident of Florida.

**5.**

Decedent Tito Livio Almeida left no surviving spouse or children.

**6.**

Plaintiffs DALMO GERALDO ALMEIDA and ANA LUCIA ALMEIDA are entitled to recover for the wrongful death of decedent Antonio Pereira Soares pursuant to La. Civ. Code art. 2315.2.

**7.**

Plaintiffs DALMO GERALDO ALMEIDA and ANA LUCIA ALMEIDA are entitled to recover damages for decedent Tito Livio Almeida's pre-death injuries pursuant to La. Civ. Code art. 2315.1.

**8.**

Plaintiffs bring this action pursuant to the Wrongful Death, Survival, and Products Liability statutes of the State of Louisiana, individually and on behalf of all beneficiaries of decedent Tito Livio Almeida.

**9.**

Defendant Panther Helicopters, Inc. ("Panther") is and was a Louisiana corporation with its principal place of business located at 2017 Engineers Road, Belle Chasse, Louisiana 70037, engaged in the business of providing on-demand air taxi services for offshore oil and gas operations, including the subject flight that Tito Livio Almeida was piloting at the time of his death.

**10.**

At all times material Defendant Panther was the owner and operator of the Bell 407-series helicopter, FAA Registration no. N79LP, that Tito Livio Almeida was piloting at the time of his death.

**11.**

At all times alleged herein, Panther includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their

predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on its behalf.

**12.**

Panther may be served with process by serving its registered agent, Lance Panepinto, 1621 Lake Placid Drive, Harvey, Louisiana 70058.

**13.**

Defendant Arrow Aviation Company, LLC, ("Arrow") is and was a Louisiana corporation with its principal place of business located at 1318 Smede Highway Broussard, Louisiana 70518, engaged in the business of providing maintenance to aircraft, including the subject helicopter Tito Livio Almeida was piloting at the time of his death.

**14.**

At all times material Defendant Arrow provided maintenance services for the Bell 407-series helicopter, FAA Registration no. N79LP, that Tito Livio Almeida was piloting at the time of his death.

**15.**

At all times alleged herein, Arrow includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on its behalf.

4/35

**16.**

Arrow may be served with process by serving its registered agent, Cyril J. Guidry, 1306-D Duchamp Road, Broussard, Louisiana 70518.

**17.**

Defendant Bell Textron, Inc. ("Bell") is and was a Delaware corporation with its principal place of business in Fort Worth, Texas, engaged in the business of designing, certifying, assembling, manufacturing, integrating, modifying, overhauling, servicing, maintaining, inspecting, testing, repairing, marketing, selling, and/or distributed helicopters and their component parts, including the Bell 407-series no. N79LP that Tito Livio Almeida was piloting at the time of his death.

**18.**

At all times material Defendant Bell is and was authorized to do and doing business in Louisiana, with its principal business establishment in Louisiana located at 107 LEDA, E. Broussard Street, Broussard, Louisiana 70518.

**19.**

At all times alleged herein, Bell includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on its behalf.

Case Number: 00066435 Transaction Date: 11/30/2020 Seq: 5 Page Sequence: 5

**20.**

Bell may be served with process by serving its registered agent, CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

**21.**

Defendant Rolls-Royce Corp. ("Rolls Royce") is and was a Delaware corporation with its principal place of business in Indianapolis, Indiana, engaged in the business of designing, manufacturing, integrating, assembling, modifying, maintaining, inspecting, testing, servicing, marketing, selling, and/or distributing helicopter turbines, engines, and their component parts, including the engine and component parts installed on the Bell 407-series no. N79LP that Tito Livio Almeida was piloting at the time of his death.

**22.**

At all times alleged herein, Rolls-Royce includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on its behalf.

**23.**

Rolls-Royce may be served with process through its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808, pursuant to Louisiana's longarm statute, LA. REV. STAT. § 13:3204.

6/35

## JURISDICTION AND VENUE

**24.**

Venue is proper in Plaquemines Parish, Louisiana because all or a substantial part of the events or omissions that give rise to the claim occurred there and Defendants Panther, Bell, and Rolls-Royce transact business there.

**25.**

This Court has jurisdiction over Defendant Panther as it is a Louisiana corporation with its principal place of business in Plaquemines Parish, Louisiana.

**26.**

This Court has jurisdiction over Defendant Arrow as it is a Louisiana corporation with its principal place of business in Lafayette Parish, Louisiana.

**27.**

This Court has jurisdiction over Defendant Bell as it regularly transacts and solicits business in and derives revenue from Louisiana, manufactured the subject helicopter that caused injury and which Bell reasonably anticipated would be found in Louisiana, is registered to do business in Louisiana and has appointed an agent for service of process in the state, and caused injury within Louisiana through acts and/or omissions in the state.

**28.**

This Court has jurisdiction over Defendant Rolls-Royce as it regularly transacts and solicits business in and derives revenue from Louisiana, manufactured the subject engine and component

7/35

parts that caused injury and which Rolls-Royce reasonably anticipated would be found in Louisiana, and caused injury within Louisiana through acts and/or omissions in the state.

## GENERAL FACTS APPLICABLE TO ALL COUNTS

**29.**

On December 7, 2019, decedent Tito Livio Almeida was piloting a Bell 407-series helicopter bearing FAA registration N79LP (the "subject helicopter") as a Part 135 on-demand air taxi service, *see* 14 C.F.R. § 135, which was a commercial operation and use of the helicopter.

**30.**

Defendant Bell designed, manufactured, and sold the subject helicopter.

**31.**

Decedent Tito Livio Almeida and one passenger were the only individuals onboard the subject helicopter.

**32.**

At the time of the subject flight decedent was licensed as a commercial rated pilot.

**33.**

The subject helicopter was registered to, owned, and operated by Panther Helicopters, Inc. for use as a Part 135 on-demand air taxi service, *see* 14 C.F.R. § 135.

**34.**

The subject helicopter was equipped with a Rolls Royce M250-C47 engine (the "subject engine"), designed, manufactured, and sold by Defendant Rolls-Royce.

**35.**

Defendant Arrow provided maintenance services for the subject helicopter.

**36.**

The subject helicopter departed from oil platform WD109 and was flying over the Gulf of Mexico en route to platform WD73.

**37.**

While in flight, the helicopter suffered a catastrophic failure, which, upon information and belief, resulted in the rotor blades coming into contact and severing from the aircraft the tail boom. The catastrophic failure was caused, in part, by a combination of engine failure, design defect, and improper maintenance on the part of the Defendants.

**38.**

The subject helicopter crashed into the Gulf of Mexico, killing two occupants: the pilot, decedent Tito Livio Almeida, and the sole passenger aboard.

**39.**

The defective helicopter, engine, and/or component part was a direct, proximate, and producing cause of the subject crash and the resulting damages incurred by decedent Tito Livio Almeida and Plaintiffs.

**40.**

Additionally, the above-described helicopter crash and resulting damages to decedent Tito Livio Almeida and Plaintiffs were the direct and proximate result of Defendants Panther, Arrow, Bell, and Rolls-Royce's negligence and tortious conduct.

<u>**CAUSES OF ACTION**</u>

**Bell Textron, Inc.**

**Count I – Louisiana Products Liability Act**

**41.**

Plaintiffs incorporate by reference and re-allege here paragraphs 1–7, 17–20, and 29–41.

**42.**

Bell, by and through its agents, employees, and representatives, designed, certified, assembled, manufactured, integrated, modified, overhauled, serviced, maintained, inspected, tested, repaired, marketed, sold, and/or distributed the Bell 407-series no. N79LP and its component parts involved in this accident.

**43.**

Bell was and is engaged in the sale of helicopters and their component parts, placing them into the stream of commerce with full knowledge and intent that they would be used and flown by purchasers, users, and operators without the opportunity for inspection or testing.

**44.**

At all times material decedent Tito Livio Almeida was using the subject helicopter as a pilot for Part 135 on-demand air transportation services, which was a reasonably anticipated use of the helicopter.

**45.**

The subject crash and resulting damages therefrom arose from Tito Livio Almeida's reasonably anticipated use of the subject helicopter for on-demand air transportation services.

**46.**

At the time the subject helicopter left Bell's control it possessed a characteristic that made it unreasonably dangerous, in that the helicopter was integrated with a defective engine or component parts and/or was designed defectively, which led to the rotor blades severing the tail boom of the subject helicopter.

**47.**

In the alternative, the subject helicopter's defective characteristics resulted from a reasonably anticipated alteration or modification of the helicopter.

**48.**

At the time the subject helicopter left Bell's control, it was unreasonably dangerous in design because an alternative design existed that would have prevented the subject crash and resulting damage, and the likelihood that the subject helicopter as-designed would cause decedent's and Plaintiffs' damages and the gravity and severity of that damage outweighed any burden on Bell of adopting that alternative design and any adverse effect it would have on the helicopter's utility.

**49.**

At the time the subject helicopter left Bell's control, it was unreasonably dangerous in construction and/or composition because it deviated in a material way from Bell's performance standards for the subject helicopter and otherwise identical Bell 407-series helicopters.

11/35

**50.**

At all times material, Bell knew or in the exercise of reasonable care should have known that if any of its helicopters or their component parts, including their engine and/or rotor design, failed, it would create an unreasonable risk of harm to persons aboard the helicopter.

**51.**

At all times material, Bell as the subject helicopter's manufacturer had a duty to use reasonable care to provide an adequate warning of any characteristic of the subject helicopter that may cause damage.

**52.**

At the time it left Bell's control the subject helicopter was unreasonably dangerous, because Bell failed to use reasonable care to provide an adequate warning of the subject helicopter's defective engine, component parts, and/or design to users and handlers of the product, including decedent Tito Livio Almeida.

**53.**

After the subject helicopter left Bell's control Bell became aware, or if acting as a reasonably prudent manufacturer should have become aware, of the subject helicopter's defective engine, component part, and/or design, but subsequently failed to use reasonable care to provide an adequate warning of that defect and its dangers to users and handlers of the product, including decedent Tito Livio Almeida.

12/35

**54.**

At all times material the subject helicopter was dangerous to an extent beyond that which users and handlers would contemplate based on ordinary knowledge of its characteristics, such that no ordinary user or handler of the subject helicopter, including decedent Tito Livio Almeida, knew or should reasonably have been expected to know of the subject helicopter's defects or of the risk of damage therefrom.

**55.**

When it sold the subject helicopter Bell expressly warranted that the helicopter was free from defects that would render it either useless or so inconvenient to use that no reasonable buyer would buy it. *See* La. Civ. Code art. 2520.

**56.**

The subject helicopter was unreasonably dangerous because it did not conform to Bell's express warranty, in that the defects in its engine and/or component parts caused the helicopter to lose power and thus be completely useless for its intended purpose of air transportation.

**57.**

Bell's express warranty that the subject helicopter was free from defects in its turbine, engine, and/or component parts induced decedent Tito Livio Almeida and Defendant Panther to use the product.

13/35

**58.**

The subject crash and resulting damage to Plaintiffs and their decedent was proximately caused because Bell's express warranty about the subject helicopter was false, in that decedent Tito Livio Almeida would not have piloted the defective helicopter but for Bell's warranty that it was airworthy and not useless.

**59.**

The subject helicopter's unreasonably dangerous characteristics were a direct, proximate, and producing cause of the helicopter crash that killed decedent Tito Livio Almeida and the resulting damages therefrom.

**60.**

Bell is liable to Plaintiffs for all damages Plaintiffs sustained as a result of their decedent Tito Livio Almeida's death, including but not limited to compensation for loss of love affection, companionship, and support, for funeral expenses, and for any other damages to which Plaintiffs may be entitled under applicable law.

**61.**

Bell is liable to Plaintiffs, decedent Tito Livio Almeida's surviving beneficiaries, for all damages Tito Livio Almeida sustained from Bell's tortious conduct before his death, including but not limited to compensation for their decedent's pre-impact fright, fear, and mental anguish, and for any other damages to which Plaintiffs may be entitled under applicable law.

14/35

**Rolls-Royce Corp.**

**Count I –Louisiana Products Liability Act**

**62.**

Plaintiffs incorporate by reference and re-allege here paragraphs 1–7, 21–23, and 29–41.

**63.**

Rolls-Royce, by and through its agents, employees, and representatives, designed, certified, assembled, manufactured, integrated, modified, overhauled, serviced, maintained, inspected, tested, repaired, marketed, sold, and/or distributed the M250-C47 engine and its component parts involved in this accident.

**64.**

Rolls-Royce was and is engaged in the sale of helicopter engines and their component parts, placing them into the stream of commerce with full knowledge and intent that they would be used and flown by purchasers, users, and operators without the opportunity for inspection or testing.

**65.**

At all times material decedent Tito Livio Almeida was using the helicopter that integrated the subject engine as a pilot for a Part 135 on-demand air transportation service flight, which was a reasonably anticipated use of the engine.

**66.**

The subject crash and resulting damages therefrom arose from Tito Livio Almeida's reasonably anticipated use of the subject engine for air transportation services.

15/35

**67.**

At the time the subject engine left Rolls-Royce's control it possessed a characteristic that made it unreasonably dangerous, in that the engine and/or its component parts was designed defectively, which led to the rotor blades severing the tail boom of the subject helicopter.

**68.**

In the alternative, the subject engine's defective characteristics resulted from a reasonably anticipated alteration or modification of the engine.

**69.**

At the time the subject engine left Rolls-Royce's control, it was unreasonably dangerous in design because an alternative design existed that would have prevented the subject crash and resulting damage, and the likelihood that the subject engine as-designed would cause decedent's and Plaintiffs' damages and the gravity and severity of that damage outweighed any burden on Rolls-Royce of adopting that alternative design and any adverse effect it would have on the engine's utility.

**70.**

At the time the subject engine left Rolls-Royce's control, it was unreasonably dangerous in construction and/or composition because it deviated in a material way from Rolls-Royce's performance standards for the subject engine and otherwise identical M250-C47 engines.

Case Number: 00066435 Transaction Date: 11/30/2020 Seq: 5 Page Sequence: 16

**71.**

At all times material, Rolls-Royce knew or in the exercise of reasonable care should have known that if any of its engines or their component parts failed it would create an unreasonable risk of harm to persons aboard the helicopter in which that engine is installed.

**72.**

At all times material, Rolls-Royce as the subject engine's manufacturer had a duty to use reasonable care to provide an adequate warning of any characteristic of the subject engine that may cause damage.

**73.**

At the time it left Rolls-Royce's control, the subject engine was unreasonably dangerous because Rolls-Royce failed to use reasonable care to provide an adequate warning of its and/or its component parts' defects to users and handlers of the product, including decedent Tito Livio Almeida.

**74.**

After the subject engine left Rolls-Royce's control Rolls-Royce became aware, or if acting as a reasonably prudent manufacturer should have become aware, of the subject engine's and/or its component parts' defects, but subsequently failed to use reasonable care to provide an adequate warning of that defect and its dangers to users and handlers of the product, including decedent Tito Livio Almeida.

17/35

**75.**

At all times material the subject engine was dangerous to an extent beyond that which ordinary users and handlers would contemplate based on ordinary knowledge of the engine's characteristics, such that no ordinary user or handler of the subject engine, including decedent, knew or should reasonably have been expected to know of the subject engine's defects or of the risk of damage therefrom.

**76.**

When it sold the subject engine Rolls-Royce expressly warranted that the engine was free from defects that would render it either useless or so inconvenient to use that no reasonable buyer would buy it. *See* La. Civ. Code art. 2520.

**77.**

The subject engine and/or component part(s) was unreasonably dangerous because it did not conform to Rolls-Royce's express warranty, in that the engine's defects caused the engine to lose power and thus be completely useless for its intended purpose of air transportation.

**78.**

Rolls-Royce's express warranty that the subject engine and/or its component part(s) was free from defects induced decedent Tito Livio Almeida and Defendant Panther to use the product.

**79.**

The subject crash and resulting damage to Plaintiffs and their decedent was proximately caused because Rolls-Royce's express warranty about the subject engine was false, in that

18/35

decedent Tito Livio Almeida would not have piloted the subject helicopter but for Rolls-Royce's warranty that the subject engine was properly designed and manufactured and not useless.

**80.**

The subject engine and/or its component part(s)'s unreasonably dangerous characteristics were a direct, proximate, and producing cause of the helicopter crash that killed decedent Tito Livio Almeida and the resulting damages therefrom.

**81.**

Rolls-Royce is liable to Plaintiffs for all damages Plaintiffs sustained as a result of their decedent Tito Livio Almeida's death, including but not limited to compensation for loss of love affection, companionship, and support, for funeral expenses, and for any other damages to which Plaintiffs may be entitled under applicable law.

**82.**

Rolls-Royce is liable to Plaintiffs, decedent Tito Livio Almeida's surviving beneficiaries, for all damages Tito Livio Almeida sustained from Rolls-Royce's tortious conduct before his ultimate death, including but not limited to compensation for their decedent's pre-impact fright, fear, and mental anguish, and for any other damages to which Plaintiffs may be entitled under applicable law.

### Panther Helicopters, Inc.

### Count I – Negligence

**83.**

Plaintiffs incorporate by reference and re-allege here paragraphs 1–11 and 29–41.

19/35

**84.**

At all times material Defendant Panther, through its employees, agents, representatives, and/or servants, owned, operated, maintained, inspected, tested, had garde of, and/or was the entity in control of the subject helicopter and its component parts.

**85.**

At all times material Defendant Panther provided the professional services of chartering, leasing, operating, and/or supplying helicopters, and pilots therefor, including the subject helicopter and its component parts.

**86.**

Defendant Panther provided the subject helicopter to decedent Tito Livio Almeida to pilot during the subject flight.

**87.**

At the time of the subject flight the subject helicopter was a dangerous instrumentality that presented a significant risk of harm to users, including decedent Tito Livio Almeida.

**88.**

As owner and operator of the subject helicopter, Panther was responsible for ensuring the subject helicopter and its component parts were properly maintained, inspected, tested, repaired, and/or operated.

20/35

**89.**

At all times material Defendant Panther as the owner, operator, and entity in control of the subject helicopter owed a duty to all users, including decedent Tito Livio Almeida, to exercise reasonable care to guard against accidents and injuries resulting from its use.

**90.**

At all times material Defendant Panther as the owner, operator, and entity in control of the subject helicopter owed a duty to owed a duty to all users, including decedent Tito Livio Almeida, to exercise reasonable care to maintain the subject helicopter in a safe and not unreasonably dangerous condition.

**91.**

At all times material, Defendant Panther as the owner, operator, and entity in control of the subject helicopter, owed a duty to all users, including decedent Tito Livio Almeida, to reasonably inspect, test, and maintain the subject helicopter so as to discover any characteristics that made it unreasonably dangerous.

**92.**

At all times material, Defendant Panther as the owner, operator, and entity in control of the subject helicopter, owed a duty to all users, including decedent Tito Livio Almeida, to either correct or adequately warn of any characteristics that Panther knew or in the exercise of reasonable care should have known made the subject helicopter unreasonably dangerous.

**93.**

Defendant Panther breached its duty of care by, among other things:

21/35

a.   Failing to properly maintain the subject helicopter in a safe condition;

b.   Failing to properly maintain, inspect, and/or test the subject helicopter and its component parts to discover its unreasonably dangerous condition;

c.   Failing to properly maintain, inspect, test, and/or repair the subject helicopter and its component parts correct its unreasonably dangerous condition, including but not limited to failing to properly replace and/or maintain the turbine, engine, and/or engine component parts; and/or

d.   Failing to warn persons operating and/or aboard the subject helicopter, including decedent Tito Livio Almeida, of the helicopter's unreasonably dangerous condition.

**94.**

At all times material, Defendant Panther's failure to exercise the required degree of care in securing the safe operation of the subject helicopter violated operative safety, maintenance, and/or transportation regulations and procedures and/or the applicable standards of care.

**95.**

Defendant Panther knew or in the exercise of due care should have known that failing to properly inspect, test, repair, service, operate, maintain, and/or warn about the subject helicopter and its component parts would create an unreasonable risk of harm or death to persons piloting and/or aboard the subject helicopter, including decedent Tito Livio Almeida.

**96.**

As a direct and proximate result of Panther's negligence, the subject helicopter suffered a catastrophic crash that caused decedent Tito Livio Almeida's fatal injuries.

22/35

**97.**

As a direct and proximate cause of Defendant Panther's negligence and their decedent Tito Livio Almeida's consequent death, Plaintiffs have been damaged, making Panther liable to Plaintiffs for such damages including but not limited to compensation for loss of love affection, companionship, and support, for funeral expenses, and for any other damages to which Plaintiffs may be entitled under applicable law.

**98.**

As a direct and proximate cause of Defendant Panther's negligence decedent Tito Livio Almeida was damaged, making Panther liable to Plaintiffs, as decedent Tito Livio Almeida's surviving beneficiaries, for all damages Tito Livio Almeida sustained from Panther's tortious conduct before his ultimate death, including but not limited to compensation for their decedent's pre-impact fright, fear, and mental anguish, and for any other damages to which Plaintiffs may be entitled under applicable law.

**Count II – Strict Liability**

**99.**

Plaintiffs incorporate by reference and re-allege here paragraphs 1–11 and 29–41.

**100.**

At all times material Defendant Panther provided the professional services of chartering, leasing, operating, and/or supplying helicopters and pilots therefor, including the subject helicopter and its component parts.

23/35

**101.**

At all times material Defendant Panther, through its employees, agents, representatives, and/or servants, owned, operated, maintained, inspected, tested, had garde of, and/or was the entity in control of the subject helicopter and its component parts

**102.**

Defendant Panther knew the subject helicopter would be used by others, including decedent Tito Livio Almeida, without opportunity for inspection, testing, or knowledge of its and/or its component parts' design, manufacturing, or inadequate warning defects.

**103.**

Defendant Panther owed a duty of care to decedent, Tito Livio Almeida, to supply the subject helicopter in a manner free from defects and fit for its intended purpose.

**104.**

Defendant Panther, by directing the subject flight and providing the subject helicopter for it, represented that the subject helicopter and its component parts could be used safely within its operational parameters and perform as expected.

**105.**

The subject helicopter reached decedent Tito Livio Almeida without substantial change in the condition in which it was owned, possessed, controlled, maintained, and/or supplied by Defendant Panther.

24/35

**106.**

At all times material decedent Tito Livio Almeida was using the subject helicopter in the manner which Panther directed, intended, and reasonably expected.

**107.**

At all times material Defendant Panther leased, operated, and/or supplied the subject helicopter and its component parts in a defective and unreasonably dangerous condition that placed users, including decedent Tito Livio Almeida, in an unreasonable risk of harm, in that the subject helicopter was defective in design and/or manufacture, and was unaccompanied by any adequate warning of those defects.

**108.**

The defective design, manufacture, testing, assembly, maintenance, warning, and/or inspection of the subject helicopter owned, operated, and supplied by Defendant Panther substantially and proximately caused the subject crash and consequent death of Tito Livio Almeida.

**109.**

As a direct and proximate result of Defendant Panther's strict liability for supplying the unreasonably dangerous subject helicopter, failing to properly maintain it, and failing to adequately warn of its defects, and for the consequent death to Tito Livio Almeida, Plaintiffs have been damaged, making Panther liable to Plaintiffs for such damages including but not limited to compensation for loss of love affection, companionship, and support, for funeral expenses, and for any other damages to which Plaintiffs may be entitled under applicable law.

25/35

**110.**

As a direct and proximate result of Defendant Panther's strict liability for supplying the unreasonably dangerous subject helicopter, failing to properly maintain it, and failing to adequately warn of its defects, and for the consequent crash, decedent Tito Livio Almeida was damaged, making Panther liable to Plaintiffs, as decedent Tito Livio Almeida's surviving beneficiaries, for all damages Tito Livio Almeida sustained from Panther's tortious conduct before his ultimate death, including but not limited to compensation for their decedent's pre-impact fright, fear, and mental anguish, and for any other damages to which Plaintiffs may be entitled under applicable law.

### Count III- Wrongful Death Resulting from Intentional Act

**111.**

Plaintiffs incorporate by reference and re-allege here paragraphs 1–11 and 29–41.

**112.**

At all times material Defendant Panther, through its employees, agents, representatives, and/or servants, owned, operated, maintained, inspected, tested, had garde of, and/or was the entity in control of the subject helicopter and its component parts.

**113.**

As part of the maintenance and operation of the subject helicopter, Panther caused the helicopter to be used as an experimental helicopter and/or with experimental components.

Case Number: 00066435 Transaction Date: 11/30/2020 Seq: 5 Page Sequence: 26

**114.**

Nonetheless, Defendant Panther provided the subject helicopter to decedent Tito Livio Almeida to pilot during the subject flight.

**115.**

Defendant Panther was substantially certain that its conduct in using the aircraft as an experimental aircraft and/or with experimental components and then returning it to service without proper maintenance or inspection would cause injury, including the death of Tito Livio Almeida.

**116.**

As a direct and proximate result of Panther's intentional acts, the subject helicopter suffered a catastrophic crash that caused decedent Tito Livio Almeida's fatal injuries.

**117.**

As a direct and proximate cause of Defendant Panther's intentional acts and Tito Livio Almeida's consequent death, Plaintiffs have been damaged, making Panther liable to Plaintiffs for such damages including but not limited to compensation for loss of love affection, companionship, and support, for funeral expenses, and for any other damages to which Plaintiffs may be entitled under applicable law.

**118.**

As a direct and proximate cause of Defendant Panther's intentional acts decedent Tito Livio Almeida was damaged, making Panther liable to Plaintiffs, as decedent Tito Livio Almeida's surviving beneficiaries, for all damages Tito Livio Almeida sustained from Panther's tortious conduct before his ultimate death, including but not limited to compensation for their decedent's

27/35

pre-impact fright, fear, and mental anguish, and for any other damages to which Plaintiffs may be entitled under applicable law.

### Count IV – Attorney's Fees

#### 119.

Plaintiffs incorporate by reference and re-allege here 1–11 and 29–41.

#### 120.

Plaintiffs retained the law firms Podhurst Orseck, P.A., the Duffey Law Firm, and Scott Vicknair, LLC to represent them in bringing their claims against Defendant Panther and have agreed to pay reasonable attorney's fees.

#### 121.

Plaintiffs are entitled to recover their reasonable and necessary attorney's fees incurred from Defendant Panther.

#### 122.

Plaintiffs request judgment in their favor and against Defendant Panther, in an amount that will fairly compensate Plaintiffs for their losses, damages, and expenses, for prejudgment and post-judgment interest as provided by law, for costs of this action, for reasonable attorney's fees, and for all other just and equitable relief to which they may show themselves entitled.

### Arrow Aviation Company, LLC

### Count I – Negligence

#### 123.

Plaintiffs incorporate by reference and re-allege here paragraphs 1–7, 13–15, and 29–41 .

**124.**

At all times material, Defendant Arrow, through its employees, agents, representatives, and/or servants maintained, inspected, and/or tested the subject helicopter and its component parts.

**125.**

At all times material, Defendant Arrow was responsible for ensuring the subject helicopter and its component parts were properly maintained, inspected, tested, repaired, and/or operated.

**126.**

At all times material, Defendant Arrow as the maintenance provider of the subject helicopter owed a duty to all users, including decedent Tito Livio Almeida, to exercise reasonable care to guard against accidents and injuries resulting from its use.

**127.**

At all times material, Defendant Arrow owed a duty to to all users, including decedent Tito Livio Almeida, to exercise reasonable care to maintain the subject helicopter in a safe and not unreasonably dangerous condition.

**128.**

At all times material, Defendant Arrow owed a duty to all users, including decedent Tito Livio Almeida, to reasonably inspect, test, and maintain the subject helicopter so as to discover any characteristics that made it unreasonably dangerous.

**129.**

At all times material, Defendant Arrow owed a duty to all users, including decedent Tito Livio Almeida, to either correct or adequately warn of any characteristics that Arrow knew or in

the exercise of reasonable care should have known made the subject helicopter unreasonably

dangerous.

**130.**

Defendant Arrow breached its duty of care by, among other things:

a. Failing to properly maintain the subject helicopter in a safe condition;

b. Failing to properly maintain, inspect, and/or test the subject helicopter and its component parts to discover its unreasonably dangerous condition;

c. Failing to properly maintain, inspect, test, and/or repair the subject helicopter and its component parts correct its unreasonably dangerous condition, including but not limited to failing to properly replace and/or maintain the turbine, engine, and/or engine component parts; and/or

d. Failing to warn persons operating and/or aboard the subject helicopter, including decedent Tito Livio Almeida, of the helicopter's unreasonably dangerous condition.

**131.**

At all times material, Defendant Arrow's failure to exercise the required degree of care

violated operative safety, maintenance, and/or transportation regulations and procedures and/or

the applicable standards of care.

**132.**

Defendant Arrow knew or in the exercise of due care should have known that failing to

properly inspect, test, repair, service, operate, maintain, and/or warn about the subject helicopter

and its component parts would create an unreasonable risk of harm or death to persons piloting

and/or aboard the subject helicopter, including decedent Tito Livio Almeida.

30/35

**133.**

As a direct and proximate result of Arrow's negligence, the subject helicopter suffered a catastrophic crash that caused decedent Tito Livio Almeida's fatal injuries.

**134.**

As a direct and proximate cause of Defendant Arrow's negligence and their decedent Tito Livio Almeida's consequent death, Plaintiffs have been damaged, making Arrow liable to Plaintiffs for such damages including but not limited to compensation for loss of love affection, companionship, and support, for funeral expenses, and for any other damages to which Plaintiffs may be entitled under applicable law.

**135.**

As a direct and proximate cause of Defendant Arrow's negligence decedent Tito Livio Almeida was damaged, making Arrow liable to Plaintiffs, as decedent Tito Livio Almeida's surviving beneficiaries, for all damages Tito Livio Almeida sustained from Arrow's tortious conduct before his ultimate death, including but not limited to compensation for their decedent's pre-impact fright, fear, and mental anguish, and for any other damages to which Plaintiffs may be entitled under applicable law.

**Count II – Strict Liability**

**136.**

Plaintiffs incorporate by reference and re-allege here paragraphs 1–7, 13–15, and 29–41.

31/35

**137.**

At all times material Defendant Arrow provided the professional maintenance services for the subject helicopter and its component parts.  Included in this maintenance service, Defendant Arrow provided component parts, either through selling or installing such components.

**138.**

Defendant Arrow knew the subject helicopter would be used by others, including decedent Tito Livio Almeida, without opportunity for inspection, testing, or knowledge of its and/or its component parts' design, manufacturing, or inadequate warning defects.

**139.**

Defendant Arrow owed a duty of care to decedent, Tito Livio Almeida, to supply the subject helicopter and any component parts in a manner free from defects and fit for their intended purpose.

**140.**

Defendant Arrow represented that the subject helicopter and its component parts could be used safely within its operational parameters and perform as expected.

**141.**

The subject helicopter reached decedent Tito Livio Almeida without substantial change in the condition in which it was maintained and/or supplied by Defendant Arrow.

**142.**

At all times material decedent Tito Livio Almeida was using the subject helicopter and its component parts in the manner which Arrow directed, intended, and reasonably expected.

Case Number: 00066435 Transaction Date: 11/30/2020 Seq: 5 Page Sequence: 32

**143.**

At all times material Defendant Arrow supplied the subject helicopter and its component parts in a defective and unreasonably dangerous condition that placed users, including decedent Tito Livio Almeida, in an unreasonable risk of harm, in that the subject helicopter and/or its component parts were defective in design and/or manufacture, and were unaccompanied by any adequate warning of those defects.

**144.**

The defective design, manufacture, testing, assembly, maintenance, warning, and/or inspection of the subject helicopter and/or its component parts supplied by Defendant Arrow substantially and proximately caused the subject crash and consequent death of Tito Livio Almeida.

**145.**

As a direct and proximate result of Defendant Arrow's strict liability for supplying the unreasonably dangerous subject helicopter/component parts, failing to properly maintain it, and failing to adequately warn of its defects, and for the consequent death to Tito Livio Almeida, Plaintiffs have been damaged, making Arrow liable to Plaintiffs for such damages including but not limited to compensation for loss of love affection, companionship, and support, for funeral expenses, and for any other damages to which Plaintiffs may be entitled under applicable law.

**146.**

As a direct and proximate result of Defendant Arrow's strict liability for supplying the unreasonably dangerous subject helicopter/component parts, failing to properly maintain it, and

33/35

failing to adequately warn of its defects, and for the consequent crash, decedent Tito Livio Almeida was damaged, making Arrow liable to Plaintiffs, as decedent Tito Livio Almeida's surviving beneficiaries, for all damages Tito Livio Almeida sustained from Arrow's tortious conduct before his ultimate death, including but not limited to compensation for their decedent's pre-impact fright, fear, and mental anguish, and for any other damages to which Plaintiffs may be entitled under applicable law.

### Count III – Attorney's Fees

**147.**

Plaintiffs incorporate by reference and re-allege here 1–7, 13–15, and 29–41.

**148.**

Plaintiffs retained the law firms Podhurst Orseck, P.A., the Duffey Law Firm, and Scott Vicknair, LLC to represent them in bringing their claims against Defendant Arrow and have agreed to pay reasonable attorney's fees.

**149.**

Plaintiffs are entitled to recover their reasonable and necessary attorney's fees incurred from Defendant Arrow.

**150.**

Plaintiffs request judgment in their favor and against Defendant Arrow, in an amount that will fairly compensate Plaintiffs for their losses, damages, and expenses, for prejudgment and post-judgment interest as provided by law, for costs of this action, for reasonable attorney's fees, and for all other just and equitable relief to which they may show themselves entitled.

34/35

## REQUEST FOR JURY TRIAL

### 151.

Plaintiffs respectfully pray for a trial by jury on all issues alleged herein.

### PRAYER

WHEREFORE, Plaintiffs, SARAH ALMEIDA, DALMO GERALDO ALMEIDA and ANA LUCIA ALMEIDA , pray for all just and equitable relief to which they may be entitled under the facts of this case, including, without limitation, recovery against Defendants, Bell Textron, Inc., Rolls-Royce Corp., Arrow Aviation Company, LLC, and Panther Helicopters, Inc., under Louisiana's wrongful death, survival, products liability, and common tort laws, and all remedies available thereunder.

SCOTT VICKNAIR, LLC

/s/ Jennifer Greene
JENNIFER GREENE, No.30899
909 Poydras Street Ste 2025
New Orleans, LA, 70112-4064
(504) 500-1111
jennifer@svlaw.law
Attorney for Plaintiff

**PLEASE SERVE:**

PANTHER HELICOPTORS, INC
Through its registered agent for service:
LANCE PANEPINTO
1621 Lake Placid Drive
Harvey, Louisiana 70058

**SERVICE INSTRUCTIONS CONTINUED ON NEXT PAGE**

BELL TEXTRON, INC.
Through its registered agent for service:
C T CORPORATION SYSTEM
3867 Plaza Tower Drive
Baton Rouge, Louisiana 70816

ARROW AVIATION COMPANY, LLC
Through its registered agent for service:
CYRIL J. GUIDRY
1306-D Duchamp Road
Broussard, Louisiana 70518

ROLLS ROYCE CORP.
To be served via longarm service:
Corporation Service Company
251 Little Falls Drive
Wilmington, Delaware 19808

36/35